IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID E. MARTINELLI,
       Plaintiff,

vs.                                       Case No. 3:09cv256/MCR/MD

DIXIE ANGELA MORROW,
       Defendant.

## REPORT AND RECOMMENDATION

This case filed pursuant to 28 U.S.C. § 1331 and *Bivens*[1] is before the court upon defendant's motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. 18). Plaintiff has responded in opposition to the motion. (Doc. 21). Upon consideration of the parties' submissions and for the reasons given below, the undersigned recommends that defendant's motion be granted and this case dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a federal prisoner serving time at the Federal Correctional Institution at Talladega, Alabama ("FCI-Talladega") for money laundering, brought this civil rights action against Assistant United States Attorney Dixie Angela Morrow, alleging that she falsely informed the Bureau of Prisons ("BOP") that plaintiff might be an escape risk. Plaintiff alleges that in response to this information, the BOP classified

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing an implied cause of action under the Constitution against federal employees in their individual capacities for violation of constitutional rights).

him to receive special monitoring. Specifically, plaintiff is on a two-hour watch from 6:00 a.m. until 10:00 p.m. which requires him to report to an officer every two hours. (Doc. 1, p. 2). Plaintiff was twice late in reporting, which resulted in his placement in a Special Housing Unit ("SHU") for over eight months. (*Id*.). Plaintiff states he has attempted to get defendant Morrow to recant her alleged falsehood by writing her a letter, submitting a complaint to The Florida Bar, and raising the issue (through his attorney) at re-sentencing in 2007. Plaintiff complains that although defendant Morrow acknowledged in her response to the Bar complaint that she provided the information to the BOP and explained her reasons for doing so, she made no such acknowledgment to plaintiff's attorney or to the sentencing court at re-sentencing. Plaintiff opines that the only reasonable explanation for defendant Morrow not to acknowledge her actions is that she lied when she stated plaintiff might be an escape risk, and that the only reasonable explanation for her to fabricate such a lie is that she was upset with plaintiff for taking his case to trial and refusing to cooperate with her office. (*Id*., p. 6). Claiming that Morrow's conduct violated the Due Process Clause of the Fifth Amendment and constituted cruel and unusual punishment in violation of the Eighth Amendment, plaintiff seeks injunctive and declaratory relief in addition to compensatory, punitive and nominal damages. (*Id*., pp. 6-7).

      Defendant responded with a motion to dismiss, claiming, *inter alia*, that even accepting the allegations of the complaint as true, plaintiff has failed to state a constitutional violation. She additionally asserts that she is immune from suit for damages under the doctrine of absolute immunity, because the alleged actions were performed in her capacity as a federal prosecutor. She further argues that even if not absolutely immune, she is entitled to qualified immunity. As a final basis for dismissal, defendant Morrow maintains that plaintiff is essentially challenging the conditions of confinement, and that such challenge must be dismissed because he failed to exhaust his administrative remedies. (Doc. 18).

In response, plaintiff contends that he has established a constitutional violation, and that Morrow is not entitled to absolute immunity because her communication occurred after his original sentencing and was upon her own initiative as opposed to in response to a BOP inquiry. He further asserts that Morrow's actions were retaliatory, and that the court must liberally construe his complaint as asserting a constitutional claim of retaliation. (Doc. 21).

Motion to Dismiss Standard

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court accepts a complaint's well-pleaded allegations as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Conclusory allegations, unwarranted deductions of fact, and legal conclusions also need not be accepted as true. *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."). The complaint may be dismissed under Rule 12(b)(6) if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their

complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Marsh*, 268 F.3d at 1022.

## Discussion

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395-397, 91 S.Ct. 1999, 2004-05, 29 L.Ed.2d 619 (1971), the Supreme Court held that injured plaintiffs can bring a cause of action for damages against federal officers based on violations of their constitutional rights. *Bivens* involved alleged violations of the Fourth Amendment, but the Supreme Court has also allowed *Bivens* actions for violations of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (equal protection component of the Due Process Clause), and the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (cruel and unusual punishments clause). Here, all of plaintiff's claims, whether for damages or declaratory and injunctive relief, can be disposed of on a single basis – the facts as pleaded fail to state a constitutional claim that is plausible on its face. [2]

---

[2] It appears defendant Morrow would be entitled to prosecutorial immunity from plaintiff's damages claims, because submitting information to the BOP for use in determining a prisoner's initial security designation seems part of the prosecutor's role in the prosecution and sentencing of federal cases, *i.e.*, a continuation of the sentencing process. *See* Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement No. 5100.08, Inmate Security Designation and Custody Classification, Introduction, p. 2 (Sept. 12, 2006) ("Initial designations to BOP institutions are initiated, in most cases by staff at the Designation and Sentence Computation Center . . . who assess and enter information from the sentencing court, U.S. Marshals Service, U.S. Attorneys Office about the inmate into a computer database (SENTRY)."). In such a case, prosecutorial immunity applies even though the prosecutor allegedly performed her function incorrectly or with dishonesty. *See Hart v. Hodges*, 587 F.3d 1288 (11th Cir. 2009); *Allen v. Thompson*, 815 F.2d 1433 (11th Cir. 1987) (concluding that prosecutor had absolute immunity for giving allegedly false information about a defendant to the BOP and the Parole Commission resulting in the BOP extending the date for parole eligibility and reclassifying the inmate to receive special monitoring).

Nonetheless, because prosecutorial immunity would not dispose of all of plaintiff's claims (those for declaratory and injunctive relief), the court does not decide this case on that basis. Rather, the court concludes that all of plaintiff's claims must fail because the allegations of the complaint fail to state a constitutional claim that is plausible on its face.

**A.     Plaintiff's allegations fail to state a plausible due process claim under the Fifth Amendment**

Plaintiff claims defendant Morrow violated his due process rights when she falsely informed the BOP that he was an escape risk. He alleges that this false information caused the BOP to impose a special monitoring condition (placing him on a two-hour watch) which, according to plaintiff is an "atypical and significant punishment above and beyond that allowed by the statute, or the U.S. Sentencing Guidelines for the offense of his conviction, or that imposed by said court. (Doc. 1, pp. 6-7).

The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. V. As plaintiff was clearly not deprived of life or property, his is entitled to due process only if he was deprived of "liberty" within the meaning of the Fifth Amendment. In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court identified two situations in which a prisoner, who has already been deprived of his liberty in the ordinary sense of the word, can be further deprived of his liberty such that due process protections are implicated. The first is "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court." *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citing *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300). The second is "when the [government] has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 1291 (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300).

Assuming, without deciding, that plaintiff's allegations are sufficient to support a finding that defendant Morrow caused him to be subjected to special

monitoring,[3] he has failed to establish that he has a liberty interest in freedom from being on a two-hour watch. Plaintiff's allegations fail to establish that the condition exceeds the sentence he is serving. Nor do his allegations demonstrate a hardship or deprivation of benefits atypical and more significant than that of other prisoners similarly situated. His sole allegation is that he is required to report to an officer every two hours between 6:00 a.m. and 10:00 p.m. That does not suggest a restriction or hardship sufficient to invoke due process protections under *Sandin*. Courts have held that changes in custody, classification levels, or even certain privileges are not atypical. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (noting generally that prison transfers and changes in classification status do not require due process protections); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3rd Cir. 1997) (holding that prisoner's exposure to the conditions of administrative custody for periods as long as 15 months "falls within the expected parameters of the sentence imposed on him by a court of law," and did not deprive him of a liberty interest); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir. 1976) (holding that inmates do not have protected liberty interests in particular custodial classification); *Thomas v. Rosemeyer*, 199 Fed. Appx. 195 (3rd Cir. 2006) (finding that plaintiff's confinement in the SHU for a period of 270 days was not an atypical or significant hardship); *see also, e.g., Solliday v. Spense*, No. 4:07cv363/RH/WCS, 2009 WL 2634207, at *11 (N.D. Fla. Aug. 21, 2009) (holding that plaintiff's placement in administrative detention in the SHU and her transfer to other institutions did not implicate a liberty interest subject to due process protections); *Powell v. Ellis*, No. 3:07cv160/MCR/EMT, 2007 WL 2669432, at *4 (N. D. Fla. Sept. 7, 2007) (holding that prisoner had no liberty interest in particular job assignment or custody classification). Although plaintiff argues strenuously that his confinement in the SHU for eight months was an atypical and significant hardship, the allegations of the

---

[3] Plaintiff admits in his complaint that it was the BOP that made the ultimate decision to place him on two-hour watch.

*Case No: 3:09cv256/MCR/MD*

complaint reveal that he was placed in the SHU not because of defendant Morrow's statement that he was an escape risk, but because of plaintiff's failure to comply with the special monitoring condition (twice failing to report). Defendant Morrow cannot be held liable for that conduct. Because plaintiff's allegations fail to state a due process claim that is plausible on its face, this claim should be dismissed.

B. Plaintiff's allegations fail to state a plausible claim under the Eighth Amendment

In assessing a claim of cruel and unusual punishment in violation of the Eighth Amendment, the court must consider "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). Cruel and unusual punishment, however, consists only of a level of punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976); *Campbell v. Sikes*, 169 F.3d 1353 (11th Cir. 1999). Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985). As the Supreme Court stated in *Rhodes*, "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, can not be free of discomfort." *Id.* at 349, 101 S.Ct. at 2400. Moreover, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399.

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. As summarized by the Eleventh Circuit in *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004):

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the

> Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). The challenged condition must be "extreme." *Id*. at 9, 112 S.Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id*. at 35, 113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id*. at 36, 113 S.Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399.

*Chandler*, 379 F.3d at 1289-90.

The second requirement, the subjective component of Eighth Amendment analysis, requires the prisoner to show that the defendant prison official acted with an attitude of deliberate indifference. *Chandler*, 379 F.3d at 1289 (citing *Wilson v. Seiter*, 510 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991)). In defining the deliberate indifference standard, the Supreme Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

The court need not consider the subjective component in this case, because plaintiff has failed to meet his burden under the objective component. *See Chandler*, 379 F.3d at 1297 (dismissing complaint based on prisoners' failure to meet objective component without reaching the subjective component). Plaintiff's allegation that

he must report to an officer ever two hours during waking hours falls far short of demonstrating that he is being denied the minimal civilized measure of life's necessities or subjected to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. 294; *Rhodes*, 452 U.S. at 347; *see also, e.g., Keller v. PA Bd. of Probation and Parole*, 240 Fed. Appx. 477, 480 n. 3 (3rd Cir. 2007)("We conclude, however, that confinement in a restricted housing unit does not in itself constitute cruel and unusual punishment in violation of the Eighth Amendment."); *Pabon v. Chmielewski*, 2008 WL 4400795, at *3 (M.D. Pa. 2008)("[T]he mere allegation that plaintiff was placed in restricted housing does not violate civilized standards of humanity and decency."); *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D. N.Y. 2002)("The conditions of special housing units do not per se constitute cruel and unusual punishment in violation of the Eighth Amendment."); *Evans v. Perkins*, 2007 WL 625922 (M.D. Ala. Feb. 27, 2007) ("Neither classification of an inmate in a higher custody level nor his confinement in a more secure correctional facility alleges a sufficiently grave deprivation so as to rise to the level of cruel and unusual punishment."). Thus, plaintiff's claim that defendant Morrow subjected him to cruel and unusual punishment when she falsely informed the BOP he was an escape risk, resulting in imposition of a two-hour watch, must fail.

    C.    Plaintiff allegations fail to state a plausible confrontation claim under the Sixth Amendment.

In his complaint, plaintiff makes the conclusional assertion that defendant Morrow violated his Sixth Amendment right to confrontation under the Constitution. (Doc. 1, p. 7). Defendant Morrow seeks dismissal of this claim on the grounds that it represents a mere summary allegation. (Doc. 18, p. 9). In response, plaintiff explains that his Sixth Amendment claim is based on his allegations that at the re-sentencing hearing in 2007, his attorney raised the issue of his security classification by advising the court that the BOP had deemed plaintiff an escape risk based on information provided by an Assistant United States Attorney. Defendant Morrow allegedly skirted the issue and failed to admit she was the source of the

information.  This, plaintiff contends, deprived him of his constitutional right to confront her about the alleged falsehood.  But even assuming defendant Morrow acted as plaintiff says she did, there in no arguable basis in the law for plaintiff's Sixth Amendment claim.  The Eleventh Circuit has held that the right to confrontation is limited to criminal trials and capital sentencing proceedings.  The right does not apply to non-capital sentencing proceedings.  *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005).  Therefore, because plaintiff had no constitutional right to confrontation at his re-sentencing, his Sixth Amendment claim must fail.

      D.     Plaintiff's allegations fail to state a plausible retaliation claim

As a final matter, the court will address plaintiff's contention that his complaint raises a plausible claim of retaliation.  In three different sections of his complaint plaintiff identifies the legal claims forming the basis of this cause of action.  In his "Preliminary Statement," plaintiff states that this civil rights action is based on "violation of the Eighth Amendment of the United States Constitution[']s prohibition against cruel and unusual punishment, and violation of the Fifth Amendment to the United States Constitution's Due Process Protection."  (Doc. 1, p. 1).  In the "Legal Claims" section of the complaint, plaintiff states that defendant Morrow's alleged lie to the BOP subjected him to atypical and significant hardship in violation of the Eighth and Fifth Amendments, and that her "lies by omission and deliberate[ly] misleading statements at his second sentencing, concerning her lies to the BOP" violated the Fifth Amendment's Due Process Clause and the Sixth Amendment's Confrontation Clause.  (*Id.*, pp. 6-7).  Finally, in his prayer for relief, plaintiff seeks, in part, a declaratory judgment that defendant Morrow's conduct "violated Martinelli's rights under the Fifth, Sixth and Eighth Amendments to the U.S. Constitution."  (*Id.*, p. 7).  Nowhere in the complaint does plaintiff suggest he is raising a retaliation claim.  Indeed, his fifty-paragraph complaint never mentions retaliation, although at the conclusion of the "Facts" section, plaintiff attempts to

explain possible reasons for defendant Morrow to lie to the BOP. His rhetorical comments contain no specific facts, but merely form a conjecture:

> 35. . . . [W]hy did Morrow not speak up at the sentencing when the matter was brought up before the court? Why did she not admit she had contacted BOP when Martinelli's attorneys originally called her office?
>
> 36. The only reasonable explanation is that Morrow lied – she lied to the court when she obfuscated concerning her knowledge of the matter she lied to the Florida Bar Association when she claimed that matters gave rise to a reasonable suspicion that inmate Martinelli had motive and means to escape.
>
> 37. The reasonable explanation for these lies, is that Morrow was upset at Martinelli for refusing to cooperate with her office and took this case to trial.

(Doc. 1, p. 6 in ECF ¶¶ 35-37).

No retaliation claim having been pleaded, defendant Morrow did not respond to the issue.

Now, in response to the motion to dismiss, plaintiff argues at length that a constitutional claim of retaliation was "clearly put forth" in his complaint. (Doc. 21, p. 3). He goes on to argue that although he did not "artfully plead" retaliation in his complaint, he did raise it in paragraph 37 and, in any event, this court must liberally construe his complaint to assert such a claim. (*Id.*, p. 4). The undersigned disagrees. The leniency afforded *pro se* pleadings does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action. *GJR Invs. Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

Nonetheless, even if the court liberally construed plaintiff's complaint as raising a constitutional claim of retaliation, the allegations of the complaint fail to state a claim that is plausible on its face. It is well settled that "the Government may not retaliate for exercising First Amendment speech rights, *see Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), or certain other rights of constitutional rank, *see, e.g., Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316,

38 L.Ed.2d 274 (1973) (Fifth Amendment privilege against self-incrimination); *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (Sixth Amendment right to trial by jury)." *Wilkie v. Robbins*, 551 U.S. 537, 555-56, 127 S.Ct. 2588, 2601, 168 L.Ed.2d 389 (2007). Generally, a retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the first and second elements. *See generally Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).

Here, plaintiff's conjecture in his complaint that vindictiveness or retaliation is a "reasonable explanation" for defendant Morrow's conduct, is the type of concluional, unwarranted deduction of fact that has been deemed insufficient to meet the heightened pleading standard applicable to civil rights cases where qualified immunity is asserted. *See Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (discussing, in a *Bivens* case, the heightened pleading standard applicable to civil rights cases, especially those involving the defense of qualified immunity); *GJR Invs. Inc.*, 132 F.3d at 1369. Further, as the Supreme Court stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965 (citation omitted). Even factoring in plaintiff's contention that defendant Morrow communicated the alleged lie at a point in time after he exercised his legal rights to a trial and to remain silent, his allegations are insufficient to raise his right to relief "above the speculative level." *Id.*

Accordingly, it is respectfully RECOMMENDED:

1. That defendant's motion to dismiss (doc. 18) be GRANTED.

2. That this cause be DISMISSED WITH PREJUDICE under 28 U.S.C. §1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief may be granted.

3. That the clerk be directed to close the file.

At Pensacola this 19th day of January, 2010.

/s/ *Miles Davis*
    **MILES DAVIS**
    **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**