IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID E. MARTINELLI,
      Plaintiff,

vs.                                 Case No. 3:09cv256/MCR/MD

DIXIE ANGELA MORROW,
      Defendant.

---

## REPORT AND RECOMMENDATION

This case filed pursuant to 28 U.S.C. § 1331 and *Bivens*[1] is before the court upon plaintiff's amended complaint (doc. 34), defendant's motion to dismiss for failure to state a claim upon which relief can be granted (doc. 35), and plaintiff's response (doc. 38). Upon consideration of the parties' submissions and for the reasons below, the undersigned recommends that defendant's motion be granted and this case dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a federal prisoner serving time at the Federal Correctional Institution at Talladega, Alabama for a 2004 money laundering conviction,[2] brings this civil rights action against Assistant United States Attorney Dixie Angela Morrow, one of the Government attorneys who prosecuted him. Plaintiff alleges that after he was

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing an implied cause of action under the Constitution against federal employees in their individual capacities for violation of constitutional rights).

[2] *See* Case Number 5:03cr33/MCR.

convicted and sentenced,[3] defendant Morrow falsely informed the Federal Bureau of Prisons ("BOP") that he was an escape risk. As a result, the BOP classified plaintiff to receive special monitoring. Specifically, plaintiff was placed on a daily two-hour watch from 6:00 a.m. until 10:00 p.m. which required him to report to an officer every two hours. (Doc. 34, p. 2). Plaintiff was twice late in reporting, which resulted in his placement in a Special Housing Unit ("SHU") for over eight months. (*Id.*). Plaintiff later learned that Ms. Morrow was the source of the "escape risk" information, because the BOP provided him with his Security Designation Data Sheet which indicated, "AUSA noted: May Attempt to Escape." (*Id.*, p. 3 and Ex. 1). In addition, in 2007 Ms. Morrow acknowledged that she was the source of the information in her response to a Florida Bar complaint plaintiff filed against her. (*Id.*, p. 5 and Ex. 8). Specifically, she stated:

> In August of 2004, I and my co-counsel notified Inmate Martinelli's Federal Bureau of Prisons' Case Manager at FCI Tallahassee, Florida about matters which gave rise to a reasonable suspicion that Inmate Martinelli had the motive and means to escape custody and leave the United States. We offered our contact numbers, those of two United States Deputy Marshals who had expressed concerns about Inmate Martinelli's risk of escape and flight, and that of the lead case agent.

(Doc. 34, p. 5 and Ex. 8).

Plaintiff alleges that Ms. Morrow knew the "escape risk" information was false, because when plaintiff's attorney brought the issue to the sentencing court's attention in March of 2007, Ms. Morrow failed to address the issue or acknowledge her role in the matter. Plaintiff opines that the only reasonable explanation for defendant Morrow not to acknowledge her actions is that she lied when she stated plaintiff was an escape risk, and the only reasonable explanation for her to fabricate such a lie is that she was upset with plaintiff for taking his case to trial and refusing to cooperate with her office during forfeiture proceedings. (*Id.*, p. 6). Claiming that

---

[3]Plaintiff was first sentenced on August 2, 2004. He alleges Ms. Morrow provided the allegedly false information to the BOP that same month. (Doc. 34, p. 5). Plaintiff was re-sentenced on March 9, 2007. *See* Case No. 5:03cr33.

*Case No: 3:09cv256/MCR/MD*

Morrow's conduct violates the Due Process Clause of the Fifth Amendment, constitutes cruel and unusual punishment in violation of the Eighth Amendment, and was done in retaliation for plaintiff exercising his constitutional rights to remain silent and to a jury trial, plaintiff seeks injunctive and declaratory relief in addition to compensatory, punitive and nominal damages. (*Id.*, p. 7).

Defendant Morrow has responded with a motion to dismiss, claiming, *inter alia*, that even accepting the allegations of the amended complaint as true, plaintiff fails to state a constitutional violation. She additionally asserts that she is immune from suit for damages under the doctrine of absolute immunity, because the alleged actions were performed in her capacity as a federal prosecutor. She further argues that even if not absolutely immune, she is entitled to qualified immunity. (Doc. 35).

In response, plaintiff contends, essentially, that he has established a constitutional violation, because all of the facts of his amended complaint must be accepted as true. He further responds that Morrow is not entitled to absolute immunity because her communication with the BOP was initiated by her and therefore not part of her official duty or closely related to a judicial function. Finally, plaintiff argues defendant Morrow is not entitled to qualified immunity, because her actions were not within her discretionary authority, he has established a violation of his constitutional rights, and at the time of Morrow's conduct the law was clearly established that her actions violated plaintiff's constitutional rights. (Doc. 38).

## Motion to Dismiss Standard

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court accepts a complaint's well-pleaded allegations as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, however, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1357 (2008). Furthermore, only <u>well pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff. Conclusory allegations, unwarranted deductions of fact, and legal conclusions need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (stating that a plaintiff must allege more than mere "labels and conclusions;" the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level."); *see also Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."); *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. 1981) [4] ("[A] complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory"); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

As the Supreme Court reiterated recently in *Iqbal,* although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pleaded allegations must

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Case No: 3:09cv256/MCR/MD*

nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

A complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Marsh*, 268 F.3d at 1022.

<u>Discussion</u>

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395-397, 91 S.Ct. 1999, 2004-05, 29 L.Ed.2d 619 (1971), the Supreme Court held that injured plaintiffs can bring a cause of action for damages against individual federal officers based on violations of their constitutional rights. *Bivens* involved alleged violations of the Fourth Amendment, but the Supreme Court has also allowed *Bivens* actions for violations of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (equal protection component of the Due Process Clause), and the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (cruel and unusual punishments clause). Here, all of plaintiff's claims, whether for damages or declaratory and injunctive relief, can be disposed of on a single basis – the facts as pleaded fail to state a constitutional claim that is plausible on its face.[5]

---

[5] It appears defendant Morrow would be entitled to prosecutorial immunity from plaintiff's damages claims, because submitting information to the BOP for use in determining a prisoner's initial security designation seems part of the prosecutor's role in the prosecution and sentencing of federal cases, *i.e.*, a continuation of the sentencing process. *See* Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement No. 5100.08, Inmate Security Designation and Custody Classification, Introduction, p. 2 (Sept. 12, 2006) ("Initial designations to BOP institutions are initiated, in most cases by staff at the Designation and Sentence Computation Center . . . who assess and enter information from the sentencing court, U.S. Marshals Service, U.S. Attorneys Office about the inmate into a computer database (SENTRY)."). In such a case, prosecutorial immunity applies even though the prosecutor allegedly performed her function incorrectly or with dishonesty. *See Hart v. Hodges*, 587 F.3d 1288 (11th Cir. 2009); *Allen v. Thompson*, 815 F.2d 1433 (11th Cir. 1987) (concluding that prosecutor had absolute immunity for giving allegedly false information about a defendant to the BOP and the Parole Commission resulting in the BOP extending the date for parole eligibility and reclassifying the inmate to receive special monitoring).

Before evaluating plaintiff's amended complaint, a brief procedural note is warranted. This is the second Report and Recommendation that has issued in this case. Previously, this court found that the allegations of plaintiff's <u>original</u> complaint failed to state a plausible claim for relief under the Fifth, Sixth and Eighth Amendments. (Docs. 25, 33). The court further found that plaintiff's allegations failed to state a plausible claim of retaliation. (*Id.*). At plaintiff's request that he be allowed to "more fully set forth" and to "more succinctly put forth" his retaliation claim, (doc. 29, pp. 4, 5), the court permitted him to file an amended complaint (doc. 33). Plaintiff's amended complaint fares no better. His present allegations supporting his retaliation claim are no more specific or substantial than his previous allegations.

A. Plaintiff's allegations fail to state a plausible due process claim under the Fifth Amendment

Plaintiff claims defendant Morrow violated his due process rights when she falsely informed the BOP that he was an escape risk. He alleges that this false information caused the BOP to impose a special monitoring condition (placing him on a two-hour watch) which, according to plaintiff is an "atypical and significant punishment above and beyond that allowed by the statute, or the U.S. Sentencing Guidelines for the offense of his conviction, or that imposed by said court. (Doc. 34, p. 6).

The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. V. As plaintiff was clearly not deprived of life or property, he is entitled to due process protections only if he was deprived of "liberty" within the meaning of the Fifth Amendment. In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United

---

Nonetheless, because prosecutorial immunity would not dispose of all of plaintiff's claims (those for declaratory and injunctive relief), the court does not decide this case on that basis. Rather, the court concludes that all of plaintiff's claims must fail because the allegations of the complaint fail to state a constitutional claim that is plausible on its face.

*Case No: 3:09cv256/MCR/MD*

States Supreme Court identified two situations in which a prisoner, who has already been deprived of his liberty in the ordinary sense of the word, can be further deprived of his liberty such that due process protections are implicated. The first is "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court." *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citing *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300). The second is "when the [government] has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 1291 (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300).

Assuming, without deciding, that plaintiff's allegations are sufficient to support a finding that defendant Morrow caused him to be subjected to special monitoring,[6] he has failed to establish that he has a liberty interest in freedom from being on a two-hour watch. Plaintiff's allegations fail to establish that the condition exceeds the sentence he is serving. Nor do his allegations demonstrate a hardship or deprivation of benefits atypical and more significant than that of other prisoners similarly situated. His sole allegation is that he is required to report to an officer every two hours between 6:00 a.m. and 10:00 p.m. That does not suggest a restriction or hardship sufficient to invoke due process protections under *Sandin*. Courts have held that changes in custody, classification levels, or even certain privileges are not atypical. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (noting generally that prison transfers and changes in classification status do not require due process protections); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3rd Cir. 1997) (holding that prisoner's exposure to the conditions of administrative custody for periods as long as 15 months "falls within the expected

---

[6]Plaintiff admits in his complaint that it was the BOP that made the ultimate decision to place him on two-hour watch.

*Case No: 3:09cv256/MCR/MD*

parameters of the sentence imposed on him by a court of law," and did not deprive him of a liberty interest); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir. 1976) (holding that inmates do not have protected liberty interests in particular custodial classification); *Thomas v. Rosemeyer*, 199 Fed. Appx. 195 (3rd Cir. 2006) (finding that plaintiff's confinement in the SHU for a period of 270 days was not an atypical or significant hardship); *see also, e.g., Solliday v. Spense*, No. 4:07cv363/RH/WCS, 2009 WL 2634207, at *11 (N.D. Fla. Aug. 21, 2009) (holding that plaintiff's placement in administrative detention in the SHU and her transfer to other institutions did not implicate a liberty interest subject to due process protections); *Powell v. Ellis*, No. 3:07cv160/MCR/EMT, 2007 WL 2669432, at *4 (N. D. Fla. Sept. 7, 2007) (holding that prisoner had no liberty interest in particular job assignment or custody classification). Although plaintiff argues strenuously that his confinement in the SHU for eight months (during the past four years) was an atypical and significant hardship, the allegations of the complaint reveal that he was placed in the SHU not because of defendant Morrow's statement that he was an escape risk, but because he failed to comply with the special monitoring condition (twice failing to report). Defendant Morrow cannot be held liable for that conduct. Because plaintiff's allegations fail to state a due process claim that is plausible on its face, this claim should be dismissed.

    B.    **Plaintiff's allegations fail to state a plausible claim under the Eighth Amendment**

In assessing a claim of cruel and unusual punishment in violation of the Eighth Amendment, the court must consider "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). Cruel and unusual punishment consists only of a level of punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976); *Campbell v. Sikes*, 169 F.3d 1353 (11th Cir. 1999). Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological

purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985). As the Supreme Court stated in *Rhodes*, "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, can not be free of discomfort." *Id.* at 349, 101 S.Ct. at 2400. Moreover, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399.

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. As summarized by the Eleventh Circuit in *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004):

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). The challenged condition must be "extreme." *Id.* at 9, 112 S.Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S.Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399.

*Chandler*, 379 F.3d at 1289-90.

The second requirement, the subjective component of Eighth Amendment analysis, requires the prisoner to show that the defendant prison official acted with an attitude of deliberate indifference. *Chandler*, 379 F.3d at 1289 (citing *Wilson v. Seiter*, 510 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991)). In defining the deliberate indifference standard, the Supreme Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

The court need not consider the subjective component in this case, because plaintiff has failed to meet his burden under the objective component. *See Chandler*, 379 F.3d at 1297 (dismissing complaint based on prisoners' failure to meet objective component without reaching the subjective component). Plaintiff's allegation that he must report to an officer ever two hours during waking hours falls far short of demonstrating that he is being denied the minimal civilized measure of life's necessities or subjected to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. 294; *Rhodes*, 452 U.S. at 347; see also, e.g., *Keller v. PA Bd. of Probation and Parole*, 240 Fed. Appx. 477, 480 n. 3 (3rd Cir. 2007) ("We conclude, however, that confinement in a restricted housing unit does not in itself constitute cruel and unusual punishment in violation of the Eighth Amendment."); *Pabon v. Chmielewski*, 2008 WL 4400795, at *3 (M.D. Pa. 2008)("[T]he mere allegation that plaintiff was placed in restricted housing does not violate civilized standards of humanity and decency."); *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D. N.Y. 2002)("The conditions of special housing units do not per se constitute cruel and unusual punishment in violation of the Eighth Amendment."); *Evans v. Perkins*, 2007 WL 625922 (M.D. Ala. Feb. 27, 2007) ("Neither classification of an inmate in a higher custody level nor his confinement in a more secure correctional facility alleges a

sufficiently grave deprivation so as to rise to the level of cruel and unusual punishment."). Thus, plaintiff's claim that defendant Morrow subjected him to cruel and unusual punishment when she falsely informed the BOP he was an escape risk, resulting in imposition of a two-hour watch, must fail.

C.  Plaintiff's allegations fail to state a plausible retaliation claim

Plaintiff claims defendant Morrow communicated the alleged falsehood about him posing an escape risk in retaliation for plaintiff exercising his Fifth Amendment right to remain silent (in connection with plaintiff refusing to cooperate in the Government's foreclosure on his personal property) and his Sixth Amendment right to trial.  (Doc. 34, pp. 5-6; Doc. 38, p. 9).

It is well settled that "the Government may not retaliate for exercising First Amendment speech rights, *see Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), or certain other rights of constitutional rank, *see, e.g., Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) (Fifth Amendment privilege against self-incrimination); *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (Sixth Amendment right to trial by jury)." *Wilkie v. Robbins*, 551 U.S. 537, 555-56, 127 S.Ct. 2588, 2601, 168 L.Ed.2d 389 (2007). Generally, a retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the first and second elements.  *See generally Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) ("To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech [or act]; and third, that there is a causal connection between the retaliatory actions and the adverse effect on [the] speech [or act].").

Here, to support his claim of retaliation plaintiff asserts that he exercised his rights to trial and to remain silent, and that upon his incarceration (after trial, conviction and sentencing) the BOP placed him on a two-hour watch as a result of information provided by defendant Morrow.  This information, plaintiff says, is referenced in defendant Morrow's response to the Bar complaint set forth above.  Plaintiff goes on to assert:

> **35. If any of this was true, why did Morrow not speak up at the sentencing when the matter was brought up before the court?  Why did she not admit she had contacted BOP when Martinelli's attorneys originally called her office?**
>
> **36.  The only reasonable explanation is that Morrow lied – she lied to the court when she obfuscated concerning her knowledge of the matter she lied to the Florida Bar Association when she claimed that matters gave rise to a reasonable suspicion that inmate Martinelli had motive and means to escape.**
>
> **37.  The only reasonable explanation for these lies is that Morrow was upset at Martinelli for refusing to cooperate with her office and because he took this case to trial.**

(Doc. 34, p. 5).

Plaintiff maintains that these "facts" – that the information Morrow provided was false and motivated by retaliation – must be accepted as true, because the law requires that.  But that is not correct.  Conclusory allegations drawn not from specific facts but from speculation and unreasonable negative inferences need not be accepted as true.  Plaintiff's conjecture that Morrow must have known the information to be false because she did not discuss it until the Bar complaint, is not a reasonable inference.  Similarly, plaintiff's conjecture that vindictiveness or retaliation is "the only reasonable explanation" for defendant Morrow's conduct, is the type of concluional, unwarranted deduction of fact that has been deemed insufficient to overcome a motion to dismiss.  See *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.  Even factoring in plaintiff's contention that defendant Morrow communicated the alleged information at a point in time after he exercised his legal

rights to a trial and to remain silent, his allegations are insufficient to raise his right to relief "above the speculative level." *Id.* Plaintiff's retaliation claim is no more "fully set forth" here than it was in his original complaint.[7]

Accordingly, it is respectfully RECOMMENDED:

1. That defendant's motion to dismiss (doc. 35) be GRANTED.

2. That this cause be DISMISSED WITH PREJUDICE under 28 U.S.C. §1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief may be granted.

3. That the clerk be directed to close the file.

At Pensacola this 12th day of November, 2010.


/s/ *Miles Davis*
      MILES DAVIS
      UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[7] In his objections to the first Report and Recommendation, plaintiff asserted that even if the undersigned was correct in finding his allegations of retaliation insufficient to state a plausible retaliation claim, the court should allow him to amend his complaint "to more fully set forth" his that claim. (Doc. 29, pp. 4, 5). The court has now provided plaintiff that opportunity, yet his allegations of retaliation are virtually identical to those of his original complaint.